Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

ROSS UEHARA-TILTON 10743-0
rut@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, Hawai‘i 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031

YOHAN LEE Cal. Bar No. 259271 (*pro hac vice forthcoming*)
ylee@yleelaw.com
5681 Beach Boulevard, Second Floor
Buena Park, California 90621
www.yleelaw.com
Telephone: (714) 523-2700

Attorneys for Petitioner
KH MAKAHA LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| KH MAKAHA LLC, a Hawai‘i limited liability company,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No.<br><br>**PETITION TO QUASH THIRD-PARTY SUMMONSES ISSUED TO FIRST HAWAIIAN BANK, CENTRAL PACIFIC BANK, AND COMMONWEALTH BUSINESS BANK UNDER 26 U.S.C. § 7609(b)(2); EXHIBITS 1–4** |

**PETITION TO QUASH THIRD-PARTY SUMMONSES ISSUED TO FIRST HAWAIIAN BANK, CENTRAL PACIFIC BANK, AND COMMONWEALTH BUSINESS BANK UNDER 26 U.S.C. § 7609(b)(2)**

Petitioner KH MAKAHA LLC ("Petitioner" or "KH Makaha"), by and through its undersigned counsel, pursuant to 26 U.S.C. § 7609(b)(2), petitions this Court to quash, or in the alternative to modify and narrow, three Internal Revenue Service summonses issued on August 17, 2026 under IRS Reference Number 396303 to First Hawaiian Bank, Central Pacific Bank, and Commonwealth Business Bank (collectively, the "Summonses"). In support, Petitioner alleges as follows:

## NATURE OF THE ACTION

1. This is a proceeding to quash third-party recordkeeper summonses under 26 U.S.C. § 7609(b)(2). On their face, the Summonses were issued by the IRS Large Business & International Division, Exchange and Offshore Strategy, at the request of the National Tax Service of the Republic of Korea under Article 28 of the Convention Between the United States of America and the Republic of Korea for the Avoidance of Double Taxation (the "Treaty"), in a matter captioned "the Republic of Korea Income Tax Liabilities of KH Gangwon Development Inc."

2. Although the identified taxpayer is KH Gangwon Development Inc. ("KH Gangwon"), a Korea corporation, each Summons demands account-

opening documents, signature cards, Know-Your-Customer and Customer Due Diligence files (each "regardless of date"), and four years of monthly statements (January 1, 2022 through December 31, 2025) for accounts held in the name of Petitioner — a separate Hawai'i limited liability company that conducts a real-estate development business in the United States. The Summonses also reach "any other accounts that may be owned, controlled, or under the signatory authority of" KH Gangwon, and define "accounts" broadly to include "all transactions" between each bank and the taxpayer, including certificates of deposit and safe-deposit boxes.

3. Petitioner seeks an order quashing the Summonses because they (a) demand records that, to the extent they concern Petitioner's unrelated U.S. activity, lack a sufficient nexus to the Korean income tax liabilities of KH Gangwon under *United States v. Powell*, 379 U.S. 48 (1964); (b) appear broader than information shown to be "necessary" and exchangeable under Article 28 of the Treaty; and (c) should not be enforced absent compliance with the administrative steps required by the Internal Revenue Code. In the alternative, Petitioner seeks an order modifying the Summonses to limit production to records bearing a concrete relationship to KH Gangwon, including transactions with KH Gangwon and records sufficient to establish ownership, control, and signatory authority.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 26 U.S.C. § 7609(h)(1), which provides that the United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceeding brought under § 7609(b)(2). The Court also has jurisdiction under 28 U.S.C. § 1340 and 28 U.S.C. § 1346(e).

5. First Hawaiian Bank is a Hawaiʻi-chartered bank with its principal place of business in Honolulu, Hawaiʻi. The Summons directed to it was addressed to 2339 Kamehameha Highway, Honolulu, Hawaiʻi 96819. First Hawaiian Bank resides and is found in this District.

6. Central Pacific Bank is a Hawaiʻi-chartered bank with its principal place of business in Honolulu, Hawaiʻi. The Summons directed to it was addressed to Attn: Deposit Servicing Micrographics, P.O. Box 3590, Honolulu, Hawaiʻi 96811-3590. Central Pacific Bank resides and is found in this District.

7. Commonwealth Business Bank is a California-chartered bank with its headquarters at 3435 Wilshire Boulevard, Los Angeles, California 90010, the address to which its Summons was directed. Commonwealth Business Bank is also found in this District: it maintains and operates full-service branch offices in Hawaii, including at 1357 Kapiolani Boulevard, Suite 102, Honolulu, Hawaiʻi 96814; 1070 North King Street, Honolulu, Hawaiʻi 96817; and 98-150 Kaonohi

Street, Suite B-104, Aiea, Hawai‘i 96701. Petitioner opened its Commonwealth Business Bank account identified in the Summons at the Kapiolani branch located at 1357 Kapiolani Boulevard, Suite 102, Honolulu, Hawai‘i 96814. The account is held by a Hawai‘i limited liability company in connection with a Hawai‘i real-estate development.

8. Venue is proper in this District under 26 U.S.C. § 7609(h)(1) and 28 U.S.C. § 1391(e)(1) because each summoned party resides or is found in this District, Petitioner resides in this District, and a substantial part of the events giving rise to this petition occurred in this District.

9. The three Summonses are properly joined in a single proceeding. They were issued on the same day, by the same IRS officer, under the same IRS Reference Number, in the same matter, for the same period, at the request of the same foreign competent authority, and each contains a materially identical attachment. *See* Fed. R. Civ. P. 18 and 20. Adjudicating them together avoids inconsistent rulings and duplicative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES

10. Petitioner KH Makaha LLC is a limited liability company organized under the laws of the State of Hawai‘i on June 14, 2022, with its principal place of business at 84-627 Makaha Valley Road, Waianae, Hawai‘i

96792. Petitioner is the account holder of the accounts identified in the Summonses and is a person entitled to notice of the Summonses under 26 U.S.C. § 7609(a). Petitioner received the IRS notice dated August 17, 2026 and therefore has the right to begin this proceeding under 26 U.S.C. § 7609(b)(2)(A).

11. Respondent is the United States of America, acting through the Internal Revenue Service. The Summonses were issued by Valentina G. Lagana, Tax Law Specialist, Employee ID 1000843140, IRS Large Business & International Division, Exchange and Offshore Strategy, 1248 N. University Drive, Mail Stop 4685 VL, Plantation, Florida 33322, and approved by Floyd B. Penn Jr., Supervisory Internal Revenue Agent.

12. The summoned third-party recordkeepers are First Hawaiian Bank, Central Pacific Bank, and Commonwealth Business Bank. None is a party to this petition. Each is entitled to notice of this proceeding and will be mailed a copy of this petition by certified mail as required by 26 U.S.C. § 7609(b)(2)(B).

13. Petitioner was initially member-managed for a short period following its formation in 2022. Petitioner transitioned to a manager-managed structure in December 2022. DCCA records reflect an Amendment filing dated December 13, 2022. From that time forward, management authority was vested in Petitioner’s designated individual manager(s).

**B. THE SUMMONSES**

14. On August 17, 2026, the IRS issued three Form 2039 summonses, each captioned "In the matter of the Republic of Korea Income Tax Liabilities of KH Gangwon Development Inc.," each identifying the IRS division as "Large Business and International," the industry/area as "Exchange and Offshore Strategy," the periods as "January 1, 2022 through December 31, 2025," and each bearing the legend "U.S.–Republic of Korea Income Tax Convention Article 28 / Type of Tax: Income." Partially-redacted copies[1] of the Summonses, their attachments, and the IRS notice letter are attached as Exhibits 1 through 3 (**Exhibit 1**: First Hawaiian Bank; **Exhibit 2**: Central Pacific Bank; **Exhibit 3**: Commonwealth Business Bank; **Exhibit 4**: IRS notice letter dated August 17, 2026 and enclosures).

15. Each Summons directs the bank to appear before Ms. Lagana or her designee at 1248 N. University Drive, Plantation, Florida 33322 on September 14, 2026 at 12:00 p.m., to give testimony under oath regarding KH Gangwon, and to produce, "pertaining to all accounts that may be owned, controlled, or under the signatory authority of Taxpayer for the period from January 1, 2022 through December 31, 2025":

(1) Account opening documents (regardless of date);

[1] The summons contain full bank account numbers, and accordingly, partially-redacted copies are attached to this Petition.

(2) Account signature cards (regardless of date);

(3) Know-Your-Customer and Customer Due Diligence records, as required to be collected and maintained under the law (regardless of date); and

(4) Monthly account statements.

*See* Exs. 1–3.

16. Each attachment then states that "[p]ossible accounts may include" a specific account "held in the name of the related entity, KH Makaha LLC" — account number [1479] at First Hawaiian Bank, account number [3636] at Central Pacific Bank, and account number [3618] at Commonwealth Business Bank — "and any other accounts that may be owned, controlled, or under the signatory authority of Taxpayer." Each attachment further provides that "the term 'accounts' encompasses all transactions between you and the Taxpayer, such as private banking accounts or activities, the purchase of certificates of deposit, or the leasing of a safe deposit box, regardless of whether you consider such arrangements to constitute an account." *See id.*

17. The only accounts actually identified in any of the Summonses are accounts held in the name of Petitioner, not KH Gangwon. The Summonses do not identify any account held in the name of KH Gangwon at any of the three banks, and no such account exists.

18. By letter dated August 17, 2026, Ms. Lagana notified Petitioner (addressed "KH Makaha LLC c/o KH Gangwon Development Inc., 84-627 Makaha Valley Rd., Waianae, HI 96792-1750") that the Summonses had been served and that Petitioner could file a petition to quash. *See* Ex. 4. The notice was sent by certified mail and was received by Petitioner on August 20, 2026.

## C. TIMELINESS AND COMPLIANCE WITH 26 U.S.C. § 7609(b)(2)

19. This petition is filed within twenty days after the day notice of the Summonses was given to Petitioner. 26 U.S.C. § 7609(b)(2)(A). The notice is dated, and on information and belief was mailed, August 17, 2026; the twentieth day thereafter is September 6, 2026. This petition is filed on or before September 4, 2026.

20. Contemporaneously with filing, Petitioner is mailing a copy of this petition by certified mail, return receipt requested, to each summoned party — First Hawaiian Bank, Central Pacific Bank, and Commonwealth Business Bank — at the addresses shown on the face of the respective Summonses, and to the IRS officer designated in the notice, Valentina Lagana, Internal Revenue Service, Mail Stop 4685 VL, 1248 N. University Drive, Plantation, Florida 33322, as required by 26 U.S.C. § 7609(b)(2)(B). Petitioner is also serving the United States in accordance with Fed. R. Civ. P. 4(i).

21. Upon the timely filing and mailing of this petition, the IRS is barred from examining any of the summoned records absent an order of this Court or Petitioner's consent. 26 U.S.C. § 7609(d)(2).

**D. PETITIONER AND ITS ACCOUNTS**

22. For a short initial period Petitioner was member-managed. Petitioner transitioned to a manager-managed structure in December 2022. DCCA records reflect an Amendment filing dated December 13, 2022. Since then, management authority has been vested in designated individual managers rather than in KH Gangwon in its capacity as member.

23. The three accounts identified in the Summonses are Petitioner's operating and project accounts. They are used to receive loan proceeds from Petitioner's United States lenders; to make lender and debt-service payments; to pay contractors, engineers, architects, consultants, insurers, utilities, property taxes, professional fees, payroll, and other project operating expenses; and to transact with third-party investors and counterparties who have no relationship with KH Gangwon or with the Republic of Korea. The overwhelming majority of the transactions reflected in the monthly statements for 2022 through 2025 involve U.S. persons and U.S.-source funds and have no connection to any item of income or deduction of KH Gangwon under Korean law.

24. The identified bank accounts were maintained as accounts of KH Makaha LLC for its U.S. operations. First Hawaiian Bank account activity began in approximately August 2022 because operating revenues needed to be deposited shortly after acquisition. Beginning in approximately January 2023, Seung Jun Kim held signatory authority over the principal KH Makaha accounts in his capacity as a U.S.-based manager of KH Makaha. Seung Jun Kim and Scott Lee had no employment, officer, director, or other affiliation with KH Gangwon. Jung Kim became a manager on April 1, 2025 and, to Petitioner's present knowledge, was not added as a signatory to the three account numbers specifically identified in the Summonses. Petitioner is obtaining historical signature cards and account-opening records from the banks and will supplement the record if necessary. Petitioner does not contend, without confirmation, that no person affiliated with KH Gangwon ever held signatory authority on any other KH Makaha account; rather, Petitioner's position is that the identified accounts were KH Makaha accounts and that KH Gangwon itself was not the named account holder.

25. KH Gangwon's principal financial interaction with Petitioner during the relevant period consisted of funding Petitioner in its capacity as member when the Project required capital. From 2022 through 2024, KH Gangwon made approximately twenty transfers to Petitioner. Petitioner's records also reflect a

small number of transfers in the opposite direction, including approximately one to two transfers in 2024 and approximately two transfers in 2025. These KH Gangwon-related transactions are discrete and separately identifiable in Petitioner's books and bank records, apart from Petitioner's much larger body of unrelated U.S. operating activity.

## E. <u>THE KOREAN INQUIRY</u>

26. Petitioner has not been provided with the request of the Korean competent authority on which the Summonses are based, and does not know its date, its stated purpose, the tax years it concerns, or the categories of information it seeks. Neither Petitioner nor, to Petitioner's knowledge, KH Gangwon has received an examination notice, document request, or other written communication from the Korean National Tax Service identifying the tax issue, transactions, or periods underlying the Treaty request.

27. Petitioner has no assets or business in Korea and accordingly it is not believed that the Korean inquiry relates to any Korean tax liability of Petitioner.

## <u>LEGAL STANDARDS</u>

28. An IRS summons is enforceable only if the government establishes, and the summons in fact satisfies, the four requirements of *United States v. Powell*, 379 U.S. 48, 57–58 (1964): (1) the investigation is being

conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. The Ninth Circuit applies the Powell requirements to every summons, and the Court's duty to ensure that its process is not abused "cannot be shirked." *See United States v. Bisceglia*, 420 U.S. 141, 151 (1975); *Crystal v. United States*, 172 F.3d 1141, 1143–44 (9th Cir. 1999).

29. A summons issued at the request of a treaty partner is subject to the same *Powell* standard. *United States v. Stuart*, 489 U.S. 353, 359–60 (1989); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1081–82 (9th Cir. 2001). The IRS is "bound by law to employ the same procedures to obtain information requested by [the treaty partner] pursuant to the Treaty as it would employ in the investigation of a domestic tax liability." *Lidas*, 238 F.3d at 1082. Article 28(1) of the Treaty independently limits exchange to information that is "necessary for carrying out the provisions of this Convention or for the prevention of fraud or for the administration of statutory provisions concerning taxes to which this Convention applies," and only to the extent the information is "of a class that can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes." Article 28(3) prohibits any exchange "which would be contrary to public policy."

30. Once the government makes its prima facie showing, the person resisting the summons may rebut it, or show that enforcement would be an abuse of the Court's process. A summons that is overbroad — that seeks material beyond what "might throw light upon" the correctness of the tax liability under investigation, *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 n.11 (1984) — fails the relevance requirement, and the Court may quash it in part or limit its scope. *See, e.g.*, *United States v. Goldman*, 637 F.2d 664, 667–68 (9th Cir. 1980). A person who makes a plausible, fact-based showing of an improper purpose is entitled to examine the issuing officer. *United States v. Clarke*, 573 U.S. 248, 254–55 (2014).

31. The Court may not, however, condition enforcement on restrictions on the IRS's subsequent use of summoned information. U*nited States v. Jose*, 131 F.3d 1325, 1329 (9th Cir. 1997) (en banc). Petitioner accordingly does not seek use restrictions; it seeks quashal or, alternatively, modification of the Summonses themselves.

## GROUNDS FOR RELIEF

### A. THE SUMMONSES DEMAND RECORDS THAT ARE NOT RELEVANT TO THE KOREAN INCOME TAX LIABILITY OF KH GANGWON (POWELL FACTOR TWO).

32. Petitioner incorporates the preceding paragraphs.

33. The Summonses identify only accounts held in the name of Petitioner, a separate U.S. entity, yet demand the entirety of those accounts' monthly statements for four years, together with account-opening documents, signature cards, and KYC/CDD records "regardless of date." The requests are not limited to transactions involving KH Gangwon, transfers to or from Korea, or any identified transaction, counterparty, or tax issue.

34. The most direct and readily identifiable nexus between the Korean income tax liabilities of KH Gangwon and Petitioner's accounts consists of transactions involving KH Gangwon and records bearing on whether KH Gangwon owned, controlled, or held signatory authority over the accounts. By contrast, complete records of Petitioner's unrelated loan draws, debt service, construction disbursements, vendor payments, and dealings with unrelated U.S. persons do not on their face illuminate KH Gangwon's Korean tax liability. Under *Goldman*, the government's relevance burden is light but not nonexistent; enforcement should be confined to records for which there is a realistic nexus to the stated inquiry.

35. KH Gangwon's status as Petitioner's sole member does not make Petitioner's bank accounts property of KH Gangwon. Under Hawaiʻi law, a member of a Hawaiʻi limited liability company "is not a co-owner of, and has no transferable interest in, property of a limited liability company." Haw. Rev. Stat. § 428-501(a). Petitioner was initially member-managed only for a short period

following formation in 2022 and transitioned to a manager-managed structure in December 2022; DCCA records reflect an Amendment filing dated December 13, 2022. During most of the 2022–2025 period, management was vested in U.S.-based managers Seung Jun Kim and Scott Lee, neither of whom had any employment, officer, director, or other affiliation with KH Gangwon. Jung Kim became a manager on April 1, 2025. KH Gangwon itself has never been designated as manager of Petitioner. These facts distinguish KH Gangwon's equity ownership from ownership of, or direct authority over, Petitioner's bank property.

36. Certain portions of account-opening, signature-card, KYC, or Customer Due Diligence records may bear on ownership, beneficial ownership, management, or signatory authority. But the Summonses demand the entire files "regardless of date," without limiting production to information that identifies Petitioner's owners, managers, beneficial owners, or authorized signatories during the relevant period. The Court can preserve any legitimate ownership-and-control inquiry while excluding unrelated personal or regulatory information by narrowing these categories.

37. Because the Summonses on their face reach a large body of records that bears no relationship to the stated inquiry, they should be quashed, or at minimum modified as set out in Part IX.

## B. **<u>THE SUMMONSES EXCEED WHAT IS "NECESSARY" AND EXCHANGEABLE UNDER ARTICLE 28 OF THE TREATY, AND, ON INFORMATION AND BELIEF, THE SCOPE OF THE KOREAN REQUEST</u>.**

38. Petitioner incorporates the preceding paragraphs.

39. The IRS's authority to issue a summons on behalf of a foreign competent authority derives from, and is limited by, the Treaty. Article 28(1) authorizes the exchange only of information "necessary" to the enumerated purposes and only of a class obtainable under each State's own laws; Article 28(3) forbids exchange contrary to public policy. A summons that sweeps in the complete banking records of a U.S. business — including its dealings with U.S. lenders, contractors, and individuals — in order to answer a question about one Korean investor's income is not confined to information "necessary" to that question.

40. Petitioner has not been provided the Korean competent authority's request and therefore cannot determine whether the four-year period and each category demanded by the Summonses correspond to the request actually transmitted by Korea. The facial breadth of the Summonses makes that correspondence material to the Court's Powell and Treaty analysis. Respondent should therefore establish, without unnecessary disclosure of protected competent-authority communications, the date, tax years, subject matter, and categories of

information requested by Korea and explain how the Summonses are directed to that request.

41. Petitioner respectfully requests that the Court require Respondent to provide an appropriate declaration describing the date, tax years, issues under inquiry, and categories of information requested by the Korean competent authority and, if the Court deems it necessary, submit the underlying request for in camera review. Petitioner does not ask the Court to evaluate the Korean authority's good faith, *see Lidas*, 238 F.3d at 1082, but to determine whether the IRS's own Summonses satisfy Powell and remain within the Treaty-based purpose asserted for them.

## C. FAILURE TO FOLLOW REQUIRED ADMINISTRATIVE STEPS (POWELL FACTOR FOUR).

42. Petitioner incorporates the preceding paragraphs.

43. Section 7609(a)(1) requires that notice of a third-party summons be given to "any person (other than the person summoned) who is identified in the summons." KH Gangwon is identified in each Summons as the taxpayer. On information and belief, the IRS did not give KH Gangwon notice at its last known address in the Republic of Korea; the only notice received was addressed to Petitioner "c/o" KH Gangwon at Petitioner's Hawaiʻi address.

44. Petitioner is not presently aware of any additional administrative defect beyond the notice issue alleged in paragraph 43 and preserves

the right to address any defect shown by Respondent's return or supporting declaration.

45. Failure to follow the administrative steps required by the Code is an independent ground for quashal under *Powell*.

**D. ABUSE OF PROCESS/IMPROPER PURPOSE**

46. Petitioner incorporates the preceding paragraphs.

47. For the reasons stated above — including the demand for complete records of a U.S. business beyond transactions and control information with a demonstrated nexus to the identified foreign taxpayer — enforcement of the Summonses as written would exceed what has been shown necessary to the stated inquiry. Petitioner reserves the right to supplement this Count upon receipt of Respondent's *Powell* declaration and any further proceedings permitted by the Court.

**E. ALTERNATIVE RELIEF: MODIFICATION OF THE SUMMONSES**

48. If the Court does not quash the Summonses in their entirety, Petitioner respectfully requests that the Court modify each Summons so that the bank is required to produce only the following, for the period January 1, 2022 through December 31, 2025:

(a) Records of each deposit, wire transfer, or other credit to the identified account of Petitioner in which KH Gangwon Development Inc., or any

account in the name of KH Gangwon Development Inc., is the originator or remitter, and records of each withdrawal, wire transfer, or other debit from the identified account of Petitioner in which KH Gangwon Development Inc. is the beneficiary or payee, together with the incoming and outgoing wire detail for those transactions;

(b) The signature card(s) for the identified account, limited to the portions identifying the account holder and authorized signatories, sufficient to show whether any officer or representative of KH Gangwon Development Inc. holds or held signatory authority;

(c) The portions of account-opening, beneficial-ownership, KYC, or Customer Due Diligence records that identify the account holder, members/owners, managers, beneficial owners, and persons with authority to control or transact on the identified account during the relevant period; and

(d) Records of any account, certificate of deposit, or safe-deposit box at the bank actually held in the name of KH Gangwon Development Inc., if any;

49. and that the Court strike or narrow (i) the demand for complete monthly statements of Petitioner's accounts except to the extent needed to identify KH Gangwon-related transactions, (ii) the demand for account-opening and KYC/CDD records "regardless of date" beyond the ownership/control/signatory

information described above, and (iii) the open-ended demand for unidentified accounts unless Respondent establishes a concrete basis for believing that KH Gangwon owns, controls, or has signatory authority over such accounts.

50. This modification would provide the Korean competent authority with every record that bears on KH Gangwon's dealings with Petitioner while protecting the records of Petitioner's unrelated U.S. transactions and the personal information of U.S. individuals who are not the subject of any inquiry. Petitioner is prepared, if the Court considers it useful, to submit a declaration identifying the KH Gangwon-related transactions by date and amount so that the banks may readily isolate them.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that the Court:

(1) Assume jurisdiction over this proceeding under 26 U.S.C. § 7609(h)(1) as to each of the three Summonses, and find that notice and hearing are proper;

(2) Order Respondent to show cause why the Summonses should not be quashed, and to file a declaration of the issuing officer addressing each Powell requirement and describing the date, scope, tax years, and subject matter of the Korean competent authority's request;

(3) Quash the Summonses issued August 17, 2026 to First Hawaiian Bank, Central Pacific Bank, and Commonwealth Business Bank under IRS Reference No. 396303;

(4) In the alternative, modify the Summonses as set forth above and enforce them only as so modified;

(5) Order that no summoned record be examined by the IRS pending final resolution of this proceeding, in accordance with 26 U.S.C. § 7609(d)(2);

(6) Permit such limited further proceedings as the Court deems appropriate if Respondent's *Powell* declaration leaves a material factual dispute concerning the scope, relevance, or administrative regularity of the Summonses;

(7) Award Petitioner its costs pursuant to 28 U.S.C. § 2412(a)(1) and other applicable law; and

(8) Grant such other and further relief as the Court deems just and proper.

[signature page follows]

DATED: Honolulu, Hawai‘i, September 4, 2026.

DAMON KEY LEONG KUPCHAK HASTERT

*/s/ Ross Uehara-Tilton*

ROSS UEHARA-TILTON

-and-

YOHAN LEE (*pro hac vice forthcoming*)

Attorneys for Petitioner
KH MAKAHA LLC

986787